**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLE GEIER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 24 CV 11532** |
| | ) | |
| **THE VILLAGE OF BOLINGBROOK;** | ) | **JURY TRIAL DEMANDED** |
| **CHIEF MICHAEL ROMPA, in his** | ) | |
| **individual capacity;** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Michelle Geier, by her attorneys, Keith L. Hunt and Delaney A. Hunt of Hunt Law, P.C., complains against Defendants Village of Bolingbrook and Michael Rompa as follows:

**I.**
**NATURE OF THE ACTION**

1.     Plaintiff brings this case under 42 U.S.C. § 1983 (Equal Protection), Title VII and the Illinois Human Rights Act against Defendants for unlawfully discriminating against Plaintiff based on her age and gender.  Plaintiff also brings a claim for retaliation. Plaintiff brings supplemental state law claims under the Public Employee Disability Act (5 ILCS 345/1), the Illinois Wage Payment and Collection Act (820 ILCS 115/1) and an Illinois common law claim for retaliatory discharge.

**The Parties**

2. The Plaintiff, Michelle Geier, resides in Lockport, Will County, Illinois, within this judicial district.

3. The Defendant, Village of Bolingbrook ("Village), is an Illinois Municipal Corporation located in Will and DuPage Counties, Illinois and resides within this judicial district.

4. The Defendant Village operates the Bolingbrook Police Department.

5. Defendant Michael Rompa resides in Bolingbrook, Will County, Illinois within this judicial district.

6. Defendant Rompa is sued in his individual capacity.

**Jurisdiction & Venue**

7. This Court has jurisdiction over the parties and the subject matter.

8. This Court has federal subject matter jurisdiction over the Plaintiff's federal law claims (Title VII and ADA Retaliation) and constitutional law claims (§1983) pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this court under 28 U.S.C § 1391(b)(2) as the unlawful employment practices and conduct described in this Complaint were committed in this judicial district.

**FACTS**

11. At all relevant times, the Plaintiff was a police officer working for the Defendant Village of Bolingbrook in its Police Department.

12.     Plaintiff was in a specialty unit working as a School Resource Officer ("SRO").

13.     Plaintiff is female.

14.     At the time of her termination, Plaintiff was 57 years old.

**Plaintiff's Duty Related Injury and Disability**

15.      On February 15, 2021, Plaintiff was responding to an emergency call.

16.     On that date, Plaintiff was exciting an ambulance when she slipped and fell on icy stairs, bouncing down three (3) stairs and landing on the hard, frozen ground.

17.     Plaintiff's fall was witnessed by a fellow police officer and several emergency personnel.

18.     Plaintiff's pain and symptoms increased over the following weeks.

19.     On March 24, 2021, Plaintiff reported her duty related injury to Sgt. Traneil Thomas, who was the street supervisor who responded to the February 15, 2021 emergency call.

20.     On April 21, 2021, Plaintiff first learned that she had a tear in the labrum of her left hip.

21.     Plaintiff immediately advised Sgt. Brennan Woods of the labral tear.

22.     On April 28, 2021, Plaintiff submitted an Injury on Duty (IOD) report to Sgt. Woods.

23.     On May 27, 2021, Plaintiff's doctor advised that she needed surgery to repair a labral tear.

24.     In August 2021, the defendants required Plaintiff to undergo an independent medical exam (IME) with Dr. Nho.

3

25.    Dr. Nho agreed that Plaintiff needed surgery to repair the labral tear.

26.    On October 18, 2021, Plaintiff underwent surgery to repair the labral tear on her left hip.

27.    Beginning in January 2022, the Village began insisting that Plaintiff provide a "return to full duty work date."

28.    Throughout the following weeks and months, Plaintiff continued to advise the department on the progress of her recovery and medical condition.

29.    The department insisted that Plaintiff return to work on a "light duty" basis.

30.    Lt. Chris Schrubbe ordered Plaintiff to return to work light duty on or about January 24, 2022.

31.    Plaintiff advised the department (through Sgt. Radicar) that she was taking tramadol.

32.    In response to Plaintiff indicating she was taking a narcotic for pain (Tramadol), the Department sent Plaintiff to an IME with Dr. Shadeed.

33.    During this IME, Dr. Shadeed refused to look at or consider any of the surgical video created by Dr. Domb during the labral surgical repair depicting the labrum both before and after the repair.

34.    However, even Dr. Shadeed did not indicate Plaintiff could return to duty without restrictions.

35.    The department required Plaintiff to get a return to full duty work status letter from her doctors.

4

36.     Three younger male officers (Cusack, Tuttle and Burke) who had been out on Injury on Duty leaves of absence were not required to get return to full duty work status letters from their doctors.

### Plaintiff Was Entitled to Receive PEDA Benefits

37.     The Illinois Public Employee Disability Act, (PEDA), 5 ILCS §345/1 et seq. provides:

> Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury.

5 ILCS §345/1(b).

38.     Plaintiff was an "eligible employee" within the meaning of PEDA – 5 ILCS §345/1(a).

39.     Although the Village initially paid Plaintiff her full salary, the Village stopped paying Plaintiff her full salary and unilaterally terminated her PEDA benefits as of April 26, 2022.

40.     As of April 26, 2022, the Village required Plaintiff to use her sick time, vacation time and other paid-time-off.

41.     By requiring Plaintiff to use her paid time off so that she could receive her full salary, Defendants violated PEDA.

42.     Plaintiff has a "property interest" in her statutory PEDA benefit.

### Plaintiff Applied for a Line of Duty Disability Pension

43.     Plaintiff applied for a Line of Duty Disability Police Pension on May 18, 2022.

44. The Village's Police Pension Board meets quarterly.

45. The Village's Police Pension Board scheduled Plaintiff's pension hearing for December 19, 2022.

46. The Bolingbrook Police Pension Board sent Plaintiff to be evaluated by three (3) Board appointed physicians to determine whether Plaintiff was disabled.

47. Each of the three (3) Board appointed physicians concluded Plaintiff was disabled.

48. The Village could have intervened in the pension board hearing process but elected not to do so.

49. By failing to intervene in the pension board process to contest the nature and extend of Plaintiff's injuries, the Village is now collaterally estopped and/or barred by res judicata from contesting that Plaintiff was injured on duty for purposes of her PEDA claim.

**Plaintiff's Termination**

50. As a member of the union, Plaintiff had a reasonable expectation of continued employment with the Village.

51. Plaintiff had a property interest in her employment as a police officer in the Village.

52. On or about November 14, 2022, Plaintiff received a letter from the Village Attorney dated November 9, 2022, indicating that if she did not provide the Village with a letter from her doctor on or before November 30, 2024, indicating that she could return to full duty without any restrictions on or before December 15, 2022, Plaintiff's employment would be terminated.

6

53. On November 23, 2022, Plaintiff filed a grievance with her union complaining that she was being terminated in violation of the collective bargaining agreement and that she was being denied compensatory time compensation.

54. In late November, the Plaintiff's union (Metropolitan Alliance of Police) (MAP) notified the Chief of Police that the pension board had scheduled a hearing to determine Plaintiff's eligibility for a line of duty police pension in mid-December.

55. Defendants terminated Plaintiff's employment on December 1, 2022, via email.

56. Defendants terminated Plaintiff's employment without providing her with a hearing or any formal process to which she was entitled under both the collective bargaining agreement and under Illinois law.

57. Defendants did not provide Plaintiff with any written statement of formal charges as required under the Illinois Uniform Peace Officer's Disciplinary Act.

58. Younger male employees were not subjected to the same scrutiny, treatment, harassment and retaliation as Plaintiff.

59. Plaintiff has been harassed because of her sex (female) and has been subjected to conduct and treatment to which her similarly situated male counterparts are not subjected.

60. Plaintiffs similarly situated male counterparts have received more favorable treatment and consideration than Plaintiff.

61. Plaintiff has been harassed and subjected to unwarranted complaints from Supervisors, including Chief Mike Rompa, including but not limited to complaints regarding:

    a.     Her workers compensation claim;

    b.     Her line of duty injury and subsequent disability.

62.     Plaintiff suffered an injury in the line of duty, including a severe injury to her left hip for which she received extensive treatment, therapy and surgery.

63.     This injury and condition constitute a "disability" within the meaning of the Americans With Disabilities Act and the ADAAA.

64.     Plaintiff's male counterparts that sustained an Injury On Duty ("IOD") were not subjected to the same discriminatory treatment, include but are not limited to the following officers:

    a.  Joe Hilbrunner – injury occurred when he was 30 years old;

    b.  Salerno – injury occurred when he was 40 years old;

    c.  Escobar – injury occurred when he was 40 years old;

    d.  Stepanek – two (2) separate injuries occurred when he was 30 years old and again in his 40s;

    e.  Albright – several injuries on duty resulting in multiple leaves in his 30s and 40s;

    f.  Daunis – injury occurred when he was 40 years old;

    g.  Radiker – injury occurred when he was 30 years old;

    h.  Jason Mitchem – injury occurred when he was 30 years old;

    i.  Sraga – injury occurred when he was 40 years old;

    j.  Christopher Kushenbach – injury occurred when he was in his late 40s;

    k.  Richard Treece – injury occurred when he was in his early 50s.

**Acts of Retaliation**

65.     Defendants have retaliated against Plaintiff in one or more of the following ways:

   a.  By terminating Plaintiff's employment;

   b.  By denying Plaintiff her PEDA benefits;

   c.  By subjecting Plaintiff to additional unwarranted independent medical examinations;

   d.  By requiring to Plaintiff to use her sick time, vacation time, personal time and compensatory time rather than providing her with PEDA benefits as required by law;

   e.  By refusing to allow Plaintiff to retire;

   f.  By refusing to provide Plaintiff with retiree credentials;

   g.  By refusing forcing Plaintiff to hire an attorney to pursue PEDA and other benefits;

   h.  By forcing Plaintiff to pursue a grievance through her union to obtain retiree status and a retiree badge;

   i.  By denying Plaintiff compensation for her sick, personal, vacation, sick and other paid time off;

   j.  Defendants have refused to resolve Plaintiff's workers' compensation claim because she filed an IDHR Complaint alleging discrimination.

66.     Defendants did not subject younger male employees who were injured on duty (or even off duty) to the same types of retaliatory acts.

9

**Plaintiff's IDHR Complaint**

67.    Plaintiff timely filed an IDHR Complaint on November 29, 2023 based on the conduct described above. (Exhibit A)

68.    The IDHR issued a Notice of Complainant's Right to File a Complaint letter on October 8, 2024 indicating that Plaintiff has the right to file a claim in a court of competent jurisdiction between November 28, 2024 and February 25, 2025. (Exhibit B).

69.    Plaintiff intends to amend this Complaint during that filing window to add her IHRA and Title VII claims.

**COUNT I**
**42 U.S.C. § 1983 – Due Process & Retaliation**
**(Against All Defendants)**

70.    Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 69 as and for this paragraph.

71.    Plaintiff enjoyed a constitutional right of due process as guaranteed under the 14th Amendment of the United States Constitution.

72.    Plaintiff had a property interest in her employment as a union member.

73.    Plaintiff had a property interest in her statutory PEDA rights.

74.    Plaintiff had a property interest in her statutory workers compensation rights.

75.    The Defendants terminated Plaintiff's employment summarily without providing her notice or an opportunity to be heard.

76.    Defendants violated Plaintiff's due process rights by summarily terminating her PEDA benefits.

10

77.     Defendants violated Plaintiff's due process rights by summarily terminating her employment.

78.     Defendants acted under color of law.

79.     Defendants acted intentionally.

80.     Defendants conduct was a proximate cause of Plaintiff's constitutional injuries.

81.     Plaintiff suffered damages.

**COUNT II**
**42 U.S.C. § 1983**
**Equal Protection Based on Gender**
**(Against All Defendants)**

82.     Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 81 as and for this paragraph.

83.     Plaintiff is female.

84.     Plaintiff is a member of a protected class (female).

85.     At all relevant times, Defendants acted intentionally and willfully.

86.     At all relevant times, Defendants acted under color of law.

87.     Defendant Village of Bolingbrook has a custom, policy and/or practice of discriminating against female officers.

88.     Defendants subjected Plaintiff to increased scrutiny and greater scrutiny than her similarly situated male counterparts and other male employees.

89.     Defendants allowed Plaintiff's male counterparts to be out on leave for injuries on duty for extended periods of time.

11

90.     Defendants did not terminate Plaintiff's male counterparts' employment as a result of reporting an Injury On Duty.

91.     Defendants did not deny PEDA benefits to male officers who were injured on duty.

92.     Defendants did not terminate Plaintiff's male counterparts employment for filing for a Line of Duty Disability Pension.

93.     Defendants intentionally discriminated against Plaintiff in connection with her termination and denial of PEDA benefits.

94.     Defendants discriminated against Plaintiff based on her gender.

95.     As a direct and proximate result of Defendant's willful conduct, Plaintiff suffered constitutional injuries.

96.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff was damaged.

**COUNT III**
**42 U.S.C § 1983 – Equal Protection Based on Age**
**(Against All Defendants)**

93. Plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1 through 92 as and for this paragraph.

97.     Plaintiff at all relevant times was a member of a protected class based on her age.

98.     Defendants did not terminate Plaintiff's male counterparts who were significantly younger than Plaintiff when those males suffered an Injury On Duty, including but not limited to:

12

a.  Joe Hilbrunner – injury occurred when he was 30 years old;

b.  Salerno – injury occurred when he was 40 years old;

c.  Escobar – injury occurred when he was 40 years old;

d.  Stepanek – two (2) separate injuries occurred when he was 30 years old and again in his 40s;

e.  Albright – several injuries on duty resulting in multiple leaves in his 30s and 40s;

f.  Daunis – injury occurred when he was 40 years old;

g.  Radiker – injury occurred when he was 30 years old;

h.  Jason Mitchem – injury occurred when he was 30 years old;

i.  Sraga – injury occurred when he was 40 years old;

j.  Christopher Kushenbach – injury occurred when he was in his late 40s;

k.  Richard Treece – injury occurred when he was in his early 50s.

99.  Plaintiff's age was a proximate cause of her termination.

100.  As a direct and proximate result of Defendant's wrongful conduct, Plaintiff was damaged.

101.  Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection.

**COUNT IV**
**§1983 – RETALIATION**
**(Against All Defendants)**

102.  Plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1 through 101 as and for this paragraph.

13

103.    Defendants retaliated against Plaintiff for filing a complaint alleging discrimination with the Illinois Department of Human Rights.

104.    By filing the IDHR complaint, Plaintiff engaged in a protected activity.

105.    Defendants have not terminated other employees who did not file complaints of discrimination.

106.    As a direct and proximate result of Defendants' conduct, plaintiff has suffered damages.

## COUNT V
## VIOLATION OF PUBLIC EMPLOYEE DISABILITY ACT (5 ILCS 345/1)
### (Against Village)

107.    Plaintiff adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 106 and for this paragraph.

108.    The Illinois Public Employee Disability Act, (PEDA), 5 ILCS §345/1 et seq. provides:

> Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury.

5 ILCS §345/1(b).

109.    Plaintiff was an "eligible employee" within the meaning of PEDA – 5 ILCS §345/1(a).

110.    Although the Village paid Plaintiff her full salary for a period of time, the Village stopped paying Plaintiff her full salary and unilaterally terminated her PEDA benefits as of April 26, 2022.

14

111. As of April 26, 2022, the Village required Plaintiff to use her sick time, vacation time and other paid-time-off.

112. By requiring Plaintiff to use her paid time off so that she could receive her full salary, Defendants violated PEDA.

113. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged.

**COUNT VI**
**VIOLATION OF IWPCA**
**(Against All Defendants)**

114. Plaintiff adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 113 as and for this paragraph.

115. The Illinois Wage Payment and Collection Act provides:

> All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned.

820 ILCS §115/4.

116. Plaintiff should not have been required to exhaust her paid time off in lieu of receiving PEDA benefits.

117. By failing to pay Plaintiff her PEDA benefits and by requiring Plaintiff to exhaust her paid time off, Defendants failed to pay Plaintiff the compensation due to her under the IWPCA, including but not limited to her paid time off.

118. Plaintiff is entitled to statutory damages and interest under the IWPCA.

**COUNT VII**
**RETALIATORY DISCHARGE (*Kelsay Claim*)**
**(Against Village)**

119.   Plaintiff adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 118 as and for this paragraph.

120.   Plaintiff filed a workers' compensation claim.

121.   By filing her workers' compensation claim, Plaintiff engaged in a protected activity.

122.   Defendants retaliated against Plaintiff for filing her workers' compensation claim in one or more of the following ways:

    a.  By terminating her employment;

    b.  By forcing her to undergo additional IME's;

    c.  By denying her PEDA benefits;

    d.  By cutting off her workers compensation benefits (TTD).

123.   Each of the foregoing acts of retaliation caused Plaintiff to suffer "materially adverse actions" as a result of her engaging in the protected activity.

124.   As a direct and proximate result, Plaintiff suffered damages.

**COUNT VIII**
**TITLE VII – GENDER DISCRIMINATION**
**(Against Village)**

125.    Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 124 as and for this paragraph.

126.   Plaintiff pleads this Count as a placeholder claim.

127.   Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the EEOC on March 2, 2023.

16

128. Under the IDHR's rules, a Plaintiff may file a complaint in a court of appropriate jurisdiction within 90 days after the one-year anniversary of a perfected charge (i.e. the "Filing Window").

129. Plaintiff's IDHR charge was perfected on November 29, 2023, making Plaintiff's Filing Window from November 28, 2024 through February 25, 2025.

130. Due to the timing of Plaintiff's § 1983 claims, Plaintiff opted to file this Complaint to preserve the timeliness of her §1983 claims prior to the IDHR filing window.

131. Plaintiff intends amend this Complaint to add her Title VII and IDHR claims immediately after the filing window opens based on Gender, Age and Disability Discrimination.

132. The IDHR has issued a Notice of Complainant's Right to File a Civil Action which is attached as Exhibit B.

**COUNT IX**
**ADEA – AGE DISCRIMINATION**
**(Against Village)**

133. Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 132 as and for this paragraph.

134. Plaintiff pleads this Count as a placeholder claim.

135. Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the EEOC on March 2, 2023.

136. Under the IDHR's rules, a Plaintiff may file a complaint in a court of appropriate jurisdiction within 90 days after the one-year anniversary of a perfected charge (i.e. the "Filing Window").

137. Plaintiff's IDHR charge was perfected on November 29, 2023, making Plaintiff's Filing Window from November 28, 2024 through February 25, 2025.

138. Due to the timing of Plaintiff's § 1983 claims, Plaintiff opted to file this Complaint to preserve the timeliness of her §1983 claims prior to the IDHR filing window.

139. Plaintiff intends amend this Complaint to add her Title VII and IDHR claims immediately after the filing window opens based on Gender, Age and Disability Discrimination.

140. The IDHR has issued a Notice of Complainant's Right to File a Civil Action which is attached as Exhibit B.

**COUNT X**
**IHRA – GENDER DISCRIMINATION**
**(Against Village)**

141. Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 140 as and for this paragraph.

142. Plaintiff pleads this Count as a placeholder claim.

143. Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the EEOC on March 2, 2023.

144. Under the IDHR's rules, a Plaintiff may file a complaint in a court of appropriate jurisdiction within 90 days after the one-year anniversary of a perfected charge (i.e. the "Filing Window").

145. Plaintiff's IDHR charge was perfected on November 29, 2023, making Plaintiff's Filing Window from November 28, 2024 through February 25, 2025.

146. Due to the timing of Plaintiff's § 1983 claims, Plaintiff opted to file this Complaint to preserve the timeliness of her §1983 claims prior to the IDHR filing window.

18

147. Plaintiff intends amend this Complaint to add her Title VII and IDHR claims immediately after the filing window opens based on Gender, Age and Disability Discrimination.

148. The IDHR has issued a Notice of Complainant's Right to File a Civil Action which is attached as Exhibit B.

**COUNT XI**
**IHRA – AGE DISCRIMINATION**
**(Against Village)**

149. Plaintiff adopts, realleges and incorporates by reference the allegations in the preceding paragraphs 1 through 148 as and for this paragraph.

150. Plaintiff pleads this Count as a placeholder claim.

151. Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the EEOC on March 2, 2023.

152. Under the IDHR's rules, a Plaintiff may file a complaint in a court of appropriate jurisdiction within 90 days after the one-year anniversary of a perfected charge (i.e. the "Filing Window").

153. Plaintiff's IDHR charge was perfected on November 29, 2023, making Plaintiff's Filing Window from November 28, 2024 through February 25, 2025.

154. Due to the timing of Plaintiff's § 1983 claims, Plaintiff opted to file this Complaint to preserve the timeliness of her §1983 claims prior to the IDHR filing window.

155. Plaintiff intends amend this Complaint to add her Title VII and IDHR claims immediately after the filing window opens based on Gender, Age and Disability Discrimination.

156.   The IDHR has issued a Notice of Complainant's Right to File a Civil Action which is attached as Exhibit B.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and award Plaintiff the following:

A.  Back pay, including all lost past wages and benefits;

B.  Plaintiff's PEDA benefits;

C.  Statutory damages under the IWPCA;

D.  Compensatory damages;

E.  Punitive Damages against the individual defendant only;

F.  Prejudgment interest;

G.  Reasonable costs and attorneys' fees under all applicable statutes, including but not limited to 42 U.S.C. § 1988, the IHRA and IWPCA;

H. Permanently enjoin Defendants, and all those persons acting in concert or participation with them, from discriminating against and harassing Plaintiff, and award other appropriate injunctive relief;

I.  Award Plaintiff all other relief as this Court deems appropriate, equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
HUNT LAW, P.C.

*Keith L. Hunt (electronic signature)*
An Attorney for Plaintiff

20

Keith L. Hunt
Delaney A. Hunt
HUNT LAW, P.C.
2275 Half Day Road
Suite 126
Bannockburn, IL 60015
P: (312) 558-1300
F: (312) 558-9911
khunt@huntpclaw.com
dhunt@huntpclaw.com